O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ELSA CHAVEZ,                        )  Case No. CV 15-02328 DDP (PJWx)
                                    )
              Plaintiff,            )  **ORDER GRANTING DEFENDANT'S MOTION**
                                    )  **FOR SUMMARY JUDGMENT**
      v.                            )
                                    )  [Dkt. No. 21]
JPMORGAN CHASE BANK,                )
                                    )
              Defendants.           )
                                    )
                                    )
_____      )

     Presently before the Court is Defendant JPMorgan Chase Bank,
N.A. ("JPMC")'s Motion for Summary Judgment.  (Mot. Summ. J.)
After hearing oral argument and considering the parties'
submissions, the Court grants the motion and adopts the following
Order.

**I. BACKGROUND**

     Between July 2010 and February 2014, Plaintiff Elsa Chavez was
employed as a Mortgage Banker at JPMC. (Decl. Theresa Marchlewski,
Ex. C ("Plaintiff's Dep.") at 47:2-48:14; Compl. at ¶ 17.)
Plaintiff entered that role after transferring from her previous

employer, Washington Mutual Bank ("WAMU"), after WAMU was acquired by JPMC. (Id.) As a Mortgage Banker, Plaintiff was tasked with obtaining loan applications and funding loans. (Id. at 53:4-13.)

Plaintiff began her employment in JMPC's Van Nuys branch.[1] In 2012, Plaintiff began dividing her time between the Van Nuys branch, where she worked Tuesdays and Thursdays, and the JPMC branch on Sherman Way, where she worked Mondays, Wednesdays, and Fridays. (Id. at 56:7-11.) It was at the Sherman Way Branch that Plaintiff alleges she first experienced discriminatory treatment. While at Sherman Way, Plaintiff reports that the Branch Manager, Jose Galvez ("Joe"), told her "You should be retired by now" on two occasions and referred to her as "tia" approximately four times. (Plaintiff's Dep. at 157:24-159:5.) According to Plaintiff, "tia" is used in Spanish "when you're call[ing] somebody old lady." (Id. at 158:24-25.) Plaintiff never reported Joe's comments to anyone else at JPMC. (Id. at 159:8-11.) Galvez was transferred from Sherman Way on July 31, 2013. (Decl. Thomas A. Beck, Ex. P.)

In August 2013, Plaintiff began efforts to transition out of her role as a Mortgage Banker. (Compl. at ¶¶ 9-11.) This commenced after a conversation Plaintiff reports having in August 2013 with the new Branch Manager at Sherman Way, Wens Sanchez. (Plaintiff's Dep. at 103:1-20.) According to Plaintiff, Sanchez was leaving to open a new branch at Woodman and Workman and had asked Plaintiff whether she would "like to come and work with [him]." (Id. at 103:19-20.) Defendants challenge the veracity of this claim given

---

[1] Defendant refers to the branch office at Victory and Sepulveda as the "Van Nuys Branch" (see Mot. Summ. J. at 2) while Plaintiff refers to it as the "Sepulveda Branch" (Opp'n. at 2.) This Court refers to it as the Van Nuys Branch for clarity.

that the new branch was not scheduled to open until after February
2014, Plaintiff did not have the appropriate license for the
position she was allegedly offered, and she did not apply for any
new positions until October 2013. (Opp'n. at 4-5.) What is
undisputed, however, is that Plaintiff and Sanchez exchanged a
series of emails in October 2013 about a possible new position at
the Woodman and Workman Branch. (Decl. Marchlewski, Ex. D at 1.) In
this exchange, Plaintiff notified Sanchez that she heard interviews
had begun and asked whether she would have the opportunity to
interview. (Id.) Sanchez responded that they were still looking and
that Plaintiff should apply "asap." (Id.) Plaintiff followed-up by
asking Sanchez whether he had a chance to "talk to [his] boss" and
whether she would "have the opportunity to work with [him.]" (Id.,
Ex. F at 1.)

Shortly after this exchange, Plaintiff states that she was
told by Sanchez that District Manager Jessica Belfortti, who was
responsible for overseeing staffing, wanted to hire somebody
younger. (Plaintiff's Dep. at 113:21-23.) Plaintiff did not discuss
this matter directly with Belfortti but she did mention the comment
to her direct supervisor, Retail Lending Manager Rocque Sandoval.
(Id.) The Branch Manager at the Van Nuys Branch also has a vague
recollection of Plaintiff mentioning the age comment. (Decl. Tara
J. Licata, Ex. L ("Padilla Dep.") at 25:25-26:3.) Neither manager
took any official actions as a result of Plaintiff's reports.
(Opp'n. at 3, 4.)

During this time, Plaintiff also stated experiencing symptoms
of stress and anxiety. (Plaintiff's Dep. at 167:20-25.) Plaintiff
first mentioned her symptoms to someone at JPMC around November

3

2013 when she told her supervisor, Rocque Sandoval, that she "was feeling stressed" and "that [her] right arm was numb." (<u>Id.</u>) She also told Sandoval that she "had a lot of headaches." (<u>Id.</u>) Sandoval responded by telling her to "take it easy." (<u>Id.</u> at 168:2-3.) In December 2013, Plaintiff went to see a doctor about her condition. (<u>Id.</u> at 170:11-22.) Her doctor informed her that he did not find "anything wrong" and thought that Plaintiff was suffering from typical stress, for which he prescribed sleeping pills. (<u>Id.</u> at 170:21-173:3.) Plaintiff mentioned to Sandoval that she had a doctor's appointment for her headaches and arm numbness but she did not mention the appointment to anyone else at JPMC. (<u>Id.</u> at 173:15-25.) Plaintiff also testified that she never provided anyone at JPMC with a doctor's note indicating she had a disability and never requested medical leave. (<u>Id.</u> at 187:11-19.)

Within a year of beginning her job as Mortgage Banker, Plaintiff began receiving negative performance reviews for her work. In her 2011 mid-year review, Plaintiff was rated "Needs Improvement," JPMC's lowest performance rating. (Decl. Roque Sandoval, Ex. H at 1.) In her 2011 year-end review, Plaintiff was rated "Low Meets Expectations," the second lowest rating. (<u>Id.</u>) During these evaluations, Plaintiff was told that a "dramatic improvement [was] needed in the area of customer service" and that she would need to take many more applications to meet JPMC's funding targets. (<u>Id.</u> at 2-3.) Plaintiffs 2012 evaluations were similar. Her mid-year rating was "Needs Improvement" and her year-end rating was "Low Meets Expectations." (<u>Id.</u>, Ex. I at 1.) Plaintiff was once more instructed to improve on her productivity

metrics and quality of work. (Id. at 3-4.) In 2013, she received another pair "Low Meets Expectations Rating." (Id., Ex. J at 1.)

In 2013, Plaintiff was offered counseling on her performance. (Id., Ex. K.) On November 6, 2013, JPMC issued a Performance Improvement Plan noting that Plaintiff had not met minimum standards for loan funding and advising her to achieve certain benchmarks over the next 30-day period. (Id.) On January 3, 2014, Plaintiff was issued a Written Warning for unsatisfactory performance and told that continuing failure to meet minimum performance standard would result in additional corrective action "up to and including termination of employment." (Id., Ex. L.) After this warning was issued, Plaintiff was informed by Sandoval that her employment may be terminated. (Plaintiff's Dep. at 147:7-25, 161:9-163:7.)

It was around this time that Plaintiff also intensified her efforts to transition out of the Mortgage Banker role. Between October and December 2013, Plaintiff applied for and was rejected from sixteen different banker positions. (Decl. Licata, Ex. B.) Around February 1 or 2, Plaintiff was offered a position as a Relationship Banker in JPMC's Sylmar, California branch at a salary of $32,000 to $36,000. (Plaintiff's Dep. at 128:7-9.) Sandoval encouraged her to take this position because her current job was in jeopardy due to negative reviews but Plaintiff declined because the pay was lower than her current salary. (Id. at 142:18-143:3.) Defendant increased the salary offer to $39,000, which was more than her current salary, but Plaintiff did not accept the offer because she believed younger people in similar positions at JPMC were being paid at least $42,000. (Id. at 131:13-132:18.) There is

1    a dispute over whether Plaintiff rejected the offer or merely did
2    not accept it. On February 6, 2014, Sandoval recommended Plaintiff
3    for termination on the basis of poor performance reviews and
4    failure to achieve productivity benchmarks. (Decl. Sandoval, Ex.
5    M.) When Plaintiff was informed about the termination decision, she
6    again raised with Sandoval the alleged comment made by Belfortti
7    about hiring younger people. (Id., Ex. I at 1-2.) On February 7,
8    2014, Plaintiff also filed an official complaint regarding the
9    comment with Human Resources. (Id. at 4.) After concluding the
10   claim could not be substantiated, Human Resources closed the
11   investigation on March 31, 2014.

12       Plaintiff timely filed a complaint with the California
13   Department of Fair Employment & Housing and obtained a "Right-to-
14   Sue" notice on November 07, 2014. (Compl., Ex. B.) Plaintiff then
15   filed the instant action in the Superior Court of the State of
16   California stating five primary claims: 1) harassment,
17   discrimination, and retaliation in employment on the basis of
18   disability; 2) harassment, discrimination, and retaliation in
19   employment on the basis of age; 3) harassment, discrimination, and
20   retaliation for taking a protected leave under the California
21   Family Rights Act; 4) retaliation and wrongful termination in
22   violation of public policy; 5) violation of California Labor Code §
23   226 requiring the maintenance and production of wage statements.

24       After removing to federal court, Defendant now moves for
25   summary judgment or adjudication of Plaintiff's claims. (Dkt. 21.)
26   **II. LEGAL STANDARD**

27       Summary judgment is appropriate where the pleadings,
28   depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show "that there is no
genuine dispute as to any material fact and the movant is entitled
to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party
seeking summary judgment bears the initial burden of informing the
court of the basis for its motion and of identifying those portions
of the pleadings and discovery responses that demonstrate the
absence of a genuine issue of material fact.  See Celotex Corp. v.
Catrett, 477 U.S. 317, 323 (1986).  All reasonable inferences from
the evidence must be drawn in favor of the nonmoving party.  See
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986).  If the
moving party does not bear the burden of proof at trial, it is
entitled to summary judgment if it can demonstrate that "there is
an absence of evidence to support the nonmoving party's case."
Celotex, 477 U.S. at 323.

     Once the moving party meets its burden, the burden shifts to
the nonmoving party opposing the motion, who must "set forth
specific facts showing that there is a genuine issue for trial."
Anderson, 477 U.S. at 256.  Summary judgment is warranted if a
party "fails to make a showing sufficient to establish the
existence of an element essential to that party's case, and on
which that party will bear the burden of proof at trial." Celotex,
477 U.S. at 322.  A genuine issue exists if "the evidence is such
that a reasonable jury could return a verdict for the nonmoving
party," and material facts are those "that might affect the outcome
of the suit under the governing law." Anderson, 477 U.S. at 248.
There is no genuine issue of fact "[w]here the record taken as a
whole could not lead a rational trier of fact to find for the

7

1 nonmoving party." <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>
2 <u>Corp.</u>, 475 U.S. 574, 587 (1986).

3     It is not the court's task "to scour the record in search of a
4 genuine issue of triable fact." <u>Keenan v. Allan</u>, 91 F.3d 1275,
5 1278 (9th Cir. 1996).  Counsel has an obligation to lay out their
6 support clearly.  <u>Carmen v. San Francisco Sch. Dist.</u>, 237 F.3d
7 1026, 1031 (9th Cir. 2001).  The court "need not examine the entire
8 file for evidence establishing a genuine issue of fact, where the
9 evidence is not set forth in the opposition papers with adequate
10 references so that it could conveniently be found." <u>Id.</u>

11 **III. DISCUSSION**

12     **A. Claims Based on Plaintiff's Disability**

13         **1. Disability Harassment Claim**

14     California's Fair Employment and Housing Act ("FEHA")
15 prohibits workplace harassment on various bases, including age and
16 disability. Cal. Gov. Code § 12940(j)(1). The elements of a hostile
17 environment harassment claim under FEHA are: 1) plaintiff belongs
18 to a protected group; 2) plaintiff was subject to unwelcome
19 harassment; 3) the harassment was based on her disability (or
20 perceived disability); 4) the harassment was sufficiently severe or
21 pervasive to alter the conditions of employment and create an
22 abusive working environment; and 5) respondeat superior. <u>Guthrey</u>
23 <u>v. Sate of California</u>, 63 Cal. App. 4th 1108, 1122-23 (citing
24 <u>Fisher v. San Pedro Peninsula Hosp.</u>, 214 Cal. App. 3d 590, 608
25 (Cal. Ct. App. 1989)). To satisfy the "severe or pervasive prong,"
26 the acts "cannot be isolated or trivial. Rather, there must be a
27 pattern of harassment of a routine or generalized nature." <u>Id.</u>

28

1    Defendant argues that it is entitled to summary judgment
2    because there is no evidence that anyone at JPMC knew about
3    Plaintiff's alleged disability much less harassed her on that
4    basis. (Mot. at 9-10.) Defendant relies on Plaintiff's own
5    testimony that her doctor found nothing wrong with her and that she
6    never provided anyone at JPMC with a doctor's note indicating she
7    had any disability. (Plaintiff's Dep. at 170:23-171:4, 187:10-13.)
8    They also reference Plaintiff's admission that no one ever made fun
9    of her for seeing a doctor or suffering from stress and anxiety and
10   that she never complained about being treated unfairly for having a
11   disability. (Id. at 175:14-19, 187:14-17.)
12       Plaintiff correctly notes that under California law, the
13   proper inquiry is not whether an individual self-reported a mental
14   disability to her employer but rather whether she actually had or
15   was regarded as having a mental disability. See Cal. Gov't Code §
16   12926(j). Furthermore, Plaintiff did complain to Sandoval on at
17   least two occasions that she was suffering from headaches, arm
18   numbness, and stress. (Plaintiff's Depo. 167:20-25; 173:15-20.)
19   However, there is no evidence that Plaintiff was harassed as a
20   result of suffering from these symptoms. Thus, the court GRANTS
21   summary judgment to Defendant on the disability harassment claim.
22              **2. Disability Discrimination Claim**
23       To prevail on summary judgment with regard to Plaintiff's
24   disability discrimination claim, Defendant must show either that
25   Plaintiff cannot establish one of the elements of a prima facie
26   case for disability discrimination under FEHA or that there was a
27   legitimate, nondiscriminatory, reason for the adverse personnel
28   actions taken against Plaintiff. Avila v. Cont'l Airlines, Inc.,

165 Cal. App. 4th 1237, 1247 (2008). If Defendant does make a showing of a legitimate reason for an adverse action, Plaintiff may nonetheless defeat a summary judgment motion by showing that there is a triable issue of fact as to whether the reason is merely pretextual. Arteaga v. Brink's, Inc., 163 Cal. App. 4th 327, 344 (2008). The burden in a summary judgment motion is on the defendant to show that the plaintiff cannot prevail. Id.

    To establish a prima facie case of disability discrimination under FEHA, a plaintiff must show that "(1) he suffers from a disability; (2) he is otherwise qualified to do his job; and, (3) he was subjected to adverse employment action because of his disability." Nigro v. Sears, Roebuck & Co., No. 12-57262, 2015 WL 1591368, at *1 (9th Cir. Apr. 10, 2015). At the summary judgment stage, the level of proof required is "minimal and does not even need to rise to the level of a preponderance of the evidence." Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998).

    Once again relying on Plaintiff's testimony that she never told anyone about her disability or complained that she was treated unfairly on the basis of her disability, Defendant argues that there is no evidence plaintiff was discriminated on the basis of her disability. (Mot. at 10.) While Plaintiff argues that Defendant was on notice regarding Plaintiff's disability, she offers no evidence to demonstrate that the adverse employment action of termination was at all connected to her disability. (See Opp'n. 10-11.)[2] Thus, the Court concludes that Plaintiff cannot meet the

---

    [2]While Plaintiff does not attempt to rebut Defendant's argument that her termination was not connected to her disability, Plaintiff does raise for the first time in her Opposition the claim
(continued...)

1 burden of establishing a prima facie case of disability

2 discrimination and GRANTS summary judgment to Defendant on

3 Plaintiff's disability discrimination claim.

4        **3. Disability Retaliation Claims**

5        In California, it is unlawful for an employer to "discharge,

6 expel, or otherwise discriminate against any person because the

7 person has opposed any practices forbidden under this part or

8 because the person has filed a complaint, testified, or assisted in

9 any proceeding under this part."  Cal. Gov't Code § 12940(h).  A

10 plaintiff makes out a prima facie case of retaliation by showing

11 that "(1) he or she engaged in a 'protected activity,' (2) the

12 employer subjected the employee to an adverse employment action,

13 and (3) a causal link existed between the protected activity and

14 the employer's action."  Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th

15 1028, 1042 (2005).  Once the plaintiff makes out a prima facie

16 case, the defendant "is required to offer a legitimate,

17 nonretaliatory reason for the adverse employment action."  Id.  If

18 the defendant offers a "legitimate reason" for the action, the

19 burden then shifts back to the plaintiff to show that the reason is

20 pretextual and the action was truly retaliatory.  Id.

21        Because Plaintiff admits that she never complained about being

22 treated unfairly on the basis of her disability and the record

23 contains no evidence of Plaintiff engaging in protected activity,

24

25 _____

26        [2](...continued)
that Defendant failed to engage in an interactive process to

27 determine reasonable accommodations pursuant to Cal. Gov't Code. §
12940(n). Because this claim was not in the original complaint, the

28 court will deem this an impermissible attempt to amend a pleading
without complying with the requirements of Fed. R. Civ. P 15.

1   the court GRANTS Defendant's motion for summary judgment on

2   Plaintiff's disability retaliation claim.

3              **4. CFRA Medical Leave Claims**

4        Under California's Family Rights Act, it is unlawful for an

5   employer "to refuse to hire, or to discharge, fine, suspend, expel,

6   or discriminate against, any individual because of . . . [a]n

7   individual's exercise of the right to family care and medical leave

8   . . . ." Cal. Gov't Code § 12945.2(l)(1). Plaintiff raises

9   harassment, discrimination, and retaliation claims in connection

10  with CFRA's medical leave protection. As a threshold matter,

11  Defendant argues that all of these claims must fail because

12  Plaintiff never took or even requested medical leave while employed

13  at JPMC. (Plaintiff's Dep. at 63:3-8, 187:18-19.) Plaintiff argues

14  that CFRA protects not only employees who take medical leave but

15  also employees who are eligible for medical leave and put their

16  employers "on notice that [they are] requesting it, or planning or

17  considering on taking it." (Opp'n. at 23-24.) Plaintiff cites no

18  authority for this proposition nor is such an interpretation

19  plausible from the face of the statute. Thus, the court GRANTS

20  summary judgment to Defendant on Plaintiff's CFRA claim.

21             **B. Claims Based on Plaintiff's Age**

22       As an initial matter, Plaintiff's age-based claims are

23  predicated primarily on three incidents. The first is an alleged

24  comment made approximately twice by the former Branch Manager at

25  Sherman Way telling Plaintiff that "[she] should retire by now!"

26  (Compl. at ¶ 50; Plaintiff's Dep. at 157:16-158:20.) The second is

27  an alleged comment by the same individual calling Plaintiff "tia"

28  on approximately four occasions, which she contends means "old

lady" in Spanish. (Plaintiff's Dep. at 158:21-159:3.) The third is
an alleged comment made by Wens Sanchez to Plaintiff that Sanchez
was told by District Manager Jessica Belfortti that Plaintiff was
passed over for the position at Woodman and Workman because the
company wanted to "hir[e] someone younger." (Compl. at ¶ 53;
Plaintiff's Dep. at 113:12-23.)

Defendant challenges the admissibility of evidence regarding
these incidents on various grounds. With regards to the comments by
the Sherman Way manager, Defendant argues that they are time-barred
because they were made more than a year prior to her filing a
complaint with the Department of Fair Employment and Housing
("DFEH"). Under FEHA, a plaintiff wishing to bring a civil action
must file a timely complaint with DFEH and receive a "right-to-sue"
notice. Cal. Gov't Code §§ 12960, 12965(b). Barring certain
exceptions, the complaint must be filed within one year of the date
when the alleged unlawful practice occurred. Id. § 12960(d). In
this case, the Sherman Way manager was transferred from Plaintiff's
branch on July 31, 2013, and thus the comments must have been made
by that date. (Decl. Beck, Ex. P.) Because Plaintiff filed her
complaint with DFEH on November 7, 2014, Defendant argues that more
than one year would have elapsed and thus the alleged comments are
not actionable.

Plaintiff does not argue that the comments are independently
actionable but instead claims that they may "'serve as relevant
background evidence to put timely claims in context.'" (Opp'n. at
21-22 (quoting Anderson v. Reno, 190 F.3d 930, 936 (9th Cir. 1990)
overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan,
536 U.S. 101, 107 (2002)).) Accordingly, the court will not

13

consider the claims by the Sherman Way manager as an independent
basis for Plaintiff's age-based harassment, disability, or
retaliation claims but will consider them to the extent they
provide context for her timely and actionable claims.

    With regards to Plaintiff's statements about what Sanchez told
her regarding Belfortti's comment, Defendant argues that this
constitutes inadmissible double hearsay, which cannot by itself
support or defeat summary adjudication. (Mot. at 15; Reply at 2.)
Plaintiff does not offer any grounds for admitting the evidence.
While Belforrti's comment to Sanchez might constitute an admission
by a party-opponent pursuant to Fed. R. Evid. 801(d), there is no
basis for admitting the second-level of hearsay. Thus, the court
will not rely on Belfortti's comment in evaluating Plaintiff's age-
based claims, except to the extent that they are offered for their
effect on Plaintiff rather than for truth of the matter asserted.
See Winkler v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 930
F.2d 1364, 1367 n.4 (9th Cir. 1991) (holding that double hearsay
cannot be considered on a motion for summary judgment).

### 1. Age Harassment claim

    Echoing the standard for disability-based harassment, a
Plaintiff alleging age-based harassment must demonstrate, among
other things, that the harassment "is sufficiently severe or
pervasive to alter the conditions of the victim's employment and
create an abusive working environment." Mokler v. Coutnry of
Orange, 157 Cal. App. 4th 121, 145 (2007).

    Defendant argues that they are entitled to summary judgment
because, even considering all the comments by the former Sherman
Way manager and Belfortti, the incidents amount to "occasional,

1   isolated, sporadic or trivial" acts that are insufficient to create

2   a hostile work environment. (Mot. at 15.) Plaintiff responds by

3   reiterating the comments described above and noting that her

4   ultimate termination provides additional evidence of harassment.

5   (Opp'n. 21 (citing <u>Roby v. McKesson Corp.</u>, 47 Cal. 4th 686, 708

6   (2009) (holding "there is no basis for excluding evidence of biased

7   personnel management actions so long as that evidence is relevant

8   to prove the communication of a hostile message")).)

9        Taking into account all admissible evidence, the court

10   concludes that Plaintiff's treatment does not rise to the level of

11   "severe or pervasive" and thus GRANTS summary judgment to Defendant

12   on Plaintiff's age harassment claim.

13                    **2. Age Discrimination Claim**

14        To establish a prima facie case for age discrimination, a

15   plaintiff must establish: "(1) at the time of the adverse action he

16   or she was 40 years of age or older, (2) an adverse employment

17   action was taken against the employee, (3) at the time of the

18   adverse action the employee was satisfactorily performing his or

19   her job, and (4) the employee was replaced in his or her position

20   by a significantly younger person." <u>Hersant v. California Dept.</u>

21   <u>Soc. Servs.</u>, 57 Cal. App. 4th 997, 1003 (1997).

22        Defendant contends that there is no evidence Plaintiff was

23   subject to an adverse employment action on the basis of her age.

24   (Opp'n. 15-16.) With regards to the decision to withdraw

25   Plaintiff's offer to join her former manager in a new role at the

26   Woodman and Workman branch, Defendant challenges both whether the

27   offer ever existed and whether Plaintiff was passed over for

28   discriminatory reasons. (Opp'n. at 16-17.) Even assuming arguendo

that Plaintiff's account of the potential position at Woodman and Workman is accurate, there is no evidence that she was denied the position on the basis of her age other than the comment that is inadmissible double hearsay.

With regard to her ultimate termination, Defendant argue that Plaintiff can provide no evidence she was terminated on the basis of her age rather than her poor performance reviews. (Opp'n. at 17.) They note in particular Plaintiff's testimony that Sandoval, the manager that recommended Plaintiff's termination, never made any comments regarding her age. (Plaintiff's Dep. at 55:17-20, 160:8-10.)

In response, Plaintiff raises two contentions. First, she argues that an inference of bias at any stage can lead to an inference that bias infected the ultimate termination decision. (Opp'n. at 20.) Given that the only actionable evidence of bias is inadmissible hearsay, the court has no basis from which to conclude that the eventual termination was affected by a similar bias. Nor does taking into account Joe Galvez's alleged comments that Plaintiff should retire alter this conclusion. While the comments may provide some context for Plaintiff's work environment, it does not change the fact that Plaintiff cannot demonstrate she was satisfactorily performing her job, as required to prove a prima facie case. Plaintiff began receiving negative performance reviews in 2011, which predates when she joined Galvez at the Sherman Way Branch. (Sandoval Decl., Ex. H; Plaintiff's Dep. at 158:4-15.)

Second, Plaintiff argues that her replacement by a younger employee proves JMPC's argument that she was fired for poor performance was mere pretext. However, the record contains no

evidence that Plaintiff was actually replaced by a younger
employee. Rather, the only evidence Plaintiff can point to is a
statement by the Van Nuys Branch Manager that she believed a woman
who appeared to be in her "[l]ate 40s" replaced Plaintiff. (Padilla
Dep. at 32:8-16, 25:16-19.) This same manager also believed
Plaintiff, who is in her sixties, appeared to be "in her late 40s,
early 50s." (Id. at 35:10-15.)

     Given the absence of any other evidence, the court concludes
that Plaintiff has not made out a prima facie case that the
treatment of Plaintiff's transfer application and eventual
termination was motivated by bias and thus GRANTS summary judgment
to Defendant on Plaintiff's age discrimination claim.

                    **3. Age Retaliation Claim**

     To establish a prima facie retaliation claim in violation of
FEHA, a plaintiff must show that "(1) he or she engaged in a
'protected activity,' (2) the employer subjected the employee to an
adverse employment action, and (3) a causal link existed between
the protected activity and the employer's action." Yanowitz v.
L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005). Under FEHA a
protected activity is defined as "oppos[ing] any practices
forbidden under this part."  Cal. Gov't Code § 12940(h).

     Defendant does not contest that Plaintiff engaged in protected
activities in connection with her age discrimination claim. (See
Opp'n. at 17.) Specifically, the record contains evidence that
Plaintiff complained to her supervisor, the Van Nuys Branch
Manager, and Human Resources about Belfortti's alleged comment.
(Plaintiff's Dep. at 113:21-23; Padilla Dep. at 25:25-26:3; Decl.
Sandoval, Ex. I.)

1    Defendant contends, however, that Plaintiff cannot establish a

2  causal link between any protected activity and adverse action. As

3  to the Human Resources complaint, Plaintiff does not offer any

4  explanation of how the action can provide the predicate protected

5  activity given that it was filed on February 7, 2014, a day after

6  Plaintiff was recommended for termination. (Decl. Sandoval, Ex. I.)

7  As to the informal complaints to the managers, Defendant argues

8  that there is no evidence the complaint affected Sandoval's

9  decision to terminate (Mot. at 17.) They note that Plaintiff admits

10  Sandoval never made any comments about Plaintiff's age and that

11  Sandoval supported Plaintiff in her efforts to transition to a new

12  role. (Plaintiff's Dep. at 55:17-20, 160:8-10, 156:14-157:3.) They

13  also argue that Plaintiff's negative performance reviews were the

14  sole reason for her termination. (Mot. at 17.)

15    In response, Plaintiff argues that the temporal proximity

16  between her complaints and the adverse action give rise to an

17  inference of retaliation. (Opp'n. at 15-16.) Plaintiff correctly

18  notes that only approximately four months elapsed between her

19  initial complaint and ultimate termination but the record also

20  reveals that Plaintiff had began receiving negative performance

21  reviews before she made her first complaint. (Decl. Sandoval, Ex.

22  H-J.) Furthermore, despite making an informal complaint about an

23  alleged ageist comment to Sandoval, Plaintiff continued to receive

24  Sandoval's support in applying for new positions at JPMC and was

25  even offered a new job at JPMC at a higher salary. (Plaintiff's

26  Dep. at 131:13-132:18.)

27    Taken together, the court concludes that Plaintiff is unable

28  to establish a prima facie case that her termination was connected

1  to any protected activity, and thus GRANTS summary judgment to

2  Defendant on Plaintiff's age retaliation claim.

3      **C. Labor Code § 226**

4      California Labor Code § 226 requires an employer to furnish

5  specific information about an employee's pay and to maintain a copy

6  of records for an employee's inspection. Cal. Lab. Code §

7  226(a),(b). "An employee suffering injury as a result of a knowing

8  and intentional failure by an employer" to comply with this

9  requirement entitled an employee to specified statutory damages.

10  (Id. § 226(e)(1).) The statute allows employers twenty-one days to

11  comply with an employee's inspection request. (Id.)

12      On November 10, 2014, Plaintiff sent a letter to Defendant

13  requesting wage statements. (Compl. at ¶¶ 95-99; Decl. Licata, Ex.

14  J.) Defendant argues that it never received the letter and thus

15  could not have "knowingly and intentionally" failed to comply with

16  the request. (Mot. at 11-12.) Aside from presenting the letter and

17  envelope containing the request, Plaintiff offers no other proof

18  that Defendant received the request much less that it knowingly and

19  intentionally failed to comply with her demand. Thus, the Court

20  GRANTS summary judgment to defendant on the section 226 claim.

21      **D. Wrongful Termination Claim**

22      Having concluded that Plaintiff's age- and disability-based

23  discrimination claims are without merit, the court also concludes

24  that defendant's termination was not contrary to public policy and

25  GRANTS Defendant summary judgment on Plaintiff's wrongful

26  termination claim.

27

28

**IV. CONCLUSION**

For the reasons stated above, Defendant's Motion for Summary Judgment is GRANTED. All pending motions in this case are now vacated, Motion In Limine (Dkt. No.25).

IT IS SO ORDERED.


Dated: June 29, 2016

                              DEAN D. PREGERSON
                              United States District Judge